## KELLY v RUBERG

Ohio Common Pleas, Hamilton Co

Decided Feb 11, 1939

Paul McQueen, Cincinnati, for plaintiff.
Strasser, Lillie & Schuessler, Cincinnati, for defendant.

### OPINION

By WOESTE, J.

This cause comes before this court upon the petition of the plaintiff as administratrix of her deceased husband.

The action sounds in negligence based upon fatal injuries received when the deceased, James Kelly, was struck and fatally injured while pushing a vehicle which had become disabled. The situs of the accident is on the west side of Vine Street, between Locust and Linden Streets, Village of Elmwood Place, at a point variously estimated from seventy to one hundred feet north of Locust Street, in the proximity of a cafe known as "The Canteen," and time 2:30 on the morning January 30, 1938. A jury was waived in writing, and the waiver was filed with the clerk according to statute.

Proof was submitted by plaintiff and at the conclusion of the plaintiff's testimony a motion was made for judgment in favor of defendant on that proof; this motion placed in issue the issues of negligence set up in the petition and necessitated a ruling, first, as to whether or not any proof of negligence on the part of the defendant had been established, and second, as to whether the proof raised an inference of negligence on the part of the plaintiff's decedent.

The court, being enjoined by law that evidence supporting the allegations of the petition must be considered true, on motion for judgment at the conclusion of the plaintiff's case, finds at this stage of the proceedings that at the time alleged an automobile owned by a stranger to this case had become disabled while parked immediately in front of "The Canteen", located as described in the petition; that at the request of such owner for aid, three persons, being Carl Hinderer, James McCoy, and the deceased, James Kelly, with the purpose of pushing the disabled vehicle, took various positions about the same. McCoy took hold of the vehicle on the right side; Hinderer took hold at a point which would be termed the right rear, whereas the deceased, Kelly, took a position in the rear; the owner remained at the wheel.

The testimony was to the effect, that before taking these respective positions, McCoy, Hinderer, and Kelly looked northwardly on Vine Street, that is, in the direction from which vehicles would come moving in the same direction of the anticipated movement of the disabled vehicle, and the witnesses McCoy and Hinderer testified that there was no other vehicle moving southwardly. The testimony was then to the effect that the vehicle was pushed forward and outwardly into the south bound lane of traffic for a distance variously estimated by witnesses from fifteen to seventy-five feet, when the defendant came upon the vehicle being propelled at a speed estimated at five miles per hour at the time when struck, the rear end of the disabled vehicle crushing the body of the deceased between the two vehicles. No warning was sounded. The body of the deceased was thrown a distance of approximately twenty feet to the left and diagonally to the east side of Vine Street, and the disabled vehicle was projected forward for a distance not in excess of one hundred feet to the south intersection of Locust and Vine Streets. The weather according to these witnesses was fair, and the street dry. The tail light of the disabled vehicle was il-

luminated. There was no other traffic moving either north or south, and for a distance of over a half mile northwardly there are no curves in the road. Boulevard lights are maintained and illuminated throughout the night, and there was some evidence of illumination from store fronts in the immediate vicinity. It was also testified to, that the witness McCoy, who was assisting in the movement of the disabled vehicle in the position on the right, said that the disabled car had been pushed to a point beyond an automobile which had been parked a distance in front of the disabled vehicle when it was at the curb, the distance being estimated at from five to twenty feet by the various witnesses, and that as the result of the impact, McCoy was thrown to the street at the curb, at a point in advance of the automobile parked in front of the position which had been occupied by the disabled automobile.

On the motion, therefore, the court finds that the testimony did not raise an inference of contributory negligence on the part of the deceased, the court being of the opinion that, as a matter of law, the act of one, pushing a disabled vehicle in regular line of traffic on a highway which is illuminated by boulevard lights is not in and of itself illegal. The presence or absence of contributory negligence being a factual one, there being present questions upon which reasonable minds could differ, and the court sitting in this instance both as judge and jury, in conformance to §11421-3, GC, overruled the motion for judgment.

The trial then proceeded with the introduction of the available proof by the defendant. All witnesses to the accident for the defense were occupants of defendant's car, including himself.

The testimony for the defendant having been completed and both parties having rested, this case, after argument of counsel, was then submitted to this court. The court is deeply appreciative of the responsibility resting upon it in a case such as the instant one, for a widow of thirty-five years of age, and two children of the respective ages of nine and eleven are involved, and because of the further consideration of the fact that the award for damages, if the court finds for the plaintiff, would necessarily be large, and such an award would necessarily work a great hardship upon the defendant. Appreciating this position therefore the court is of the opinion that it is to the best interests of all concerned that its findings of fact and law should be stated and be of record.

Coming then to a statement of fact after all the proof had been submitted, the court does find:

That at about 2:30 A. M., on the morning of January 30, 1938, an automobile owned by a person not a party to this case had become disabled because of a weak battery and at the time it was in a stationary position next to the curb immediately in front of a cafe known as "The Canteen", located approximately one hundred feet north of Locust Street, on the west side of Vine Street, in the village of Elmwood Place; that a request was made by a person acting upon the owner's suggestion that some assistance be given by persons who were patrons of "The Canteen". Responding to this request, Carl Hinderer, James McCoy and the deceased, James Kelly, came out of the cafe and took hold of the disabled vehicle, with the intention of pushing it forward and southwardly to Locust Street where it was the expressed intention, because of an existing down grade, to cause it to roll easily and thus assist the battery in causing combustion to result in the operation of the motor.

At the time and place alleged the court finds that there were other vehicles parked on Vine Street to the front and to the rear of the disabled car when it was in a stationary position; that the car parked in front was at a sufficient distance to permit the disabled car to be pushed forward without the necessity of backing to accomplish the movement; that there were two or three cars parked to the north and to the rear of the disabled car at irregular distances, the first or nearest car to the disabled vehicle being parked within a comfortable parking distance behind it.

The court finds that when the decedent Kelly and the witnesses Hinderer and McCoy were about to take hold of the disabled vehicle to push it forward, each looked northwardly, at which time there was no vehicle approaching from the north within their range of vision. They therefore took hold of the disabled vehicle, with the owner at the wheel, and pushed it forward and outwardly in the southbound lane of travel, beyond the parked car ahead and in a position, with reference to the street car rails, straddling the westernmost rail, or the right rail of the south bound street car track; that the rate of speed obviously was about that accomplished by a person walking and with such resistance as an automobile would offer under the circumstances; that after such vehicle had attained an approximate speed of five miles per hour and had reached a point well in

the regularly traveled portion of the road beyond the line of parked vehicles, and some distance in advance of the car parked immediately in front of the position occupied by the disabled car, an automobile owned and operated by the defendant, moving in a southwardly direction, overtook the disabled vehicle, striking it with great force, crushing the body of the decedent between the two vehicles, hurling the decedent's body a distance of approximately twenty feet to the left and forward to the east side of the street, and again by reason of the impact, projecting forcibly and with violence the disabled vehicle a distance of in excess of one hundred feet, where it came to a stop on the south side of the intersection of Locust and Vine Streets. Defendants' vehicle came to an immediate stationary position.

The court finds, as a matter of fact, that as the result of the impact James Kelly, this plaintiff's decedent, sustained fatal injuries from which he died several hours later.

The court does further find that the defendant was operating his car at a rate of speed of approximately thirty-five miles per hour, and that the locality was one which could be defined as a congested district on a highway where at intermittent streets semaphore traffic lights are maintained (but not in operation at the time of this accident.)

The court further finds that the defendant was operating his car in a negligent manner in the following particulars, to-wit:

1. That he was driving his car at a speed greater than was reasonable and proper having due regard for the traffic, surface and width of the road and other conditions then and there existing.

2. In driving his automobile at a speed greater than was reasonable and proper and which would permit him to bring said automobile to a stop within the assured clear distance ahead.

3. In operating his automobile without due regard for the safety and rights of others, especially those of James Kelly, the deceased, and so as to endanger the life and limb of the said James Kelly.

4. In driving his automobile over said Vine Street without keeping the proper lookout ahead and without having same under proper control.

In this connection the court wishes to quote from the testimony of defendant, who in answer to the questions of his attorney testified as follows:

"Q. Tell the judge, then, what happened as you come down there to this point opposite "The Canteen" restaurant or cafe, tell it in your own way?

A. Your Honor, I really had no occasion to speed. I had my wife, my mother-in-law, this other lady with me. I don't ever drive an automobile fast. My father was laid up in the hospital for a year and I went down to see him and saw all those crippled fellows down there. If that wouldn't be an incentive for slow driving nothing would. We come in there and I don't know how it happened, I saw that machine hit the machine and that is all I remember. I went forward over the wheel. My wife's head hit the windshield and cut the top and put a big lump on her head. She climbed out there in more of a daze than anything else and I looked ahead of me and it seemed to me that machine was right in front of us. They must have pushed that machine away. That machine wasn't that distance. I never drive more than thirty-five miles an hour. I wasn't going more than twenty, twenty-five miles an hour because the traffic lights were out. In a little village you go through with traffic lights on the main highway but those birds shoot through there like the dickens where they got their street lights burning. When they swore out that warrant for me for manslaughter I went out there on Monday morning to give myself up and I was talking to the man at the desk and * * *". (Emphasis by the court):

Then to the testimony of the defendant's wife (seated in the front seat beside him) as follows:

"Q. How close were you to this machine, the machine that you struck, Mrs. Ruberg, when you first saw it? Just indicate from any place in the room there from where you are sitting.

A. Where this machine apparently loomed up as you might say as we were moving along?

Q. Yes, did you notice where it came from?

A. No, it was simply right there but there was a space on the side and afterwards somebody said it was pushed up; these men were pushing it right out and there were cars parked on both sides."

From the quoted testimony the only conclusion which can be drawn is that the defendant in operating his vehicle, for some reason which this court is unable to find factually, although traveling at a rate of speed of thirty-five miles per hour (testi-

mony of witness Hamilton) did not see the visible vehicle, although that vehicle, being of the sedan type, was clearly visible within the range of his lights and had the tail light illuminated visibly.

The court further finds that the plaintiff's decedent, James Kelly, in performing the act of pushing the visible vehicle into the traveled portion of the highway, having reached a point sufficiently distant to become, along with the automobile, which he was propelling, discernible to traffic coming from the rear, and having progressed with said vehicle, moving necessarily at a lawful rate of speed, well into the traveled portion of the highway, and in a position straddling the westernmost rail of the street car tracks, was not engaging in an illegal act by so doing.

The court finds that if the defendant had been exercising ordinary care, conforming to the rules of the road as established by statute and common law, he could have witnessed the presence of a large discernible object in the road, and if traveling at a reasonable rate of speed conforming to his range of vision could have brought his car safely to a stop, or because of the absence of north bound traffic, could have moved his vehicle to the left and passed around the visible vehicle, and that the plaintiff's decedent had the right to anticipate that vehicles approaching from the rear would be operated in a lawful manner in the interests of his safety and other persons or things properly on the highway.

The court further finds from the testimony that rain started within ten minutes after the accident occurred.

The court further finds that the deceased was a man of forty years of age; that by trade he was an artisan, but that at the time of his death, for some years preceding that time, he was engaged as a bartender, earning the sum of $25.00 per week; that he leaves surviving him a widow of thirty-five years of age, and two boys, who at the time of the accident were respectively nine and eleven years of age; and that by reason of the sole negligence of this defendant, his estate, should be awarded damages based upon the probable monetary value to his family of the deceased had he not been killed, and that such damage, in the opinion of the court, is in excess of $10,000, but because of the prayer being limited to the sum of $10,000, judgment is awarded in favor of the plaintiff for that sum, with her costs herein involved.

This case necessarily involves the pronouncement of a rule of conduct which would govern persons in the position of the deceased under the circumstances prevailing in this case. Such a pronouncement necessarily involves a consideration of the rule of ordinary care applying. In determining what would constitute reasonable care for the deceased Kelly, it is the opinion of this court, that while he can not totally disregard attending conditions and evidences of approaching danger, yet he did have a right to bear in mind that the car itself was of considerable size and could be seen by reason of its size by a motorist approaching from the rear. The rear window of the car was naturally capable of reflecting the lights of approaching vehicles and such reflection afforded the opportunity of further notice to drivers to the rear of the visible car. The deceased, in the exercise of ordinary care, was not bound to anticipate negligence upon the part of a car approaching from the rear, and in the absence of circumstances which would afford notice to the contrary, had a right to expect, and act upon the expectation that the defendant would exercise reasonable care, observe the rules of the road, drive his car at a speed which would permit him to stop it within the assured clear distance ahead, and steer to the left at the proper time, so as to avoid a collision with himself and the car being shoved. The path of the defendant car was not fixed like a railroad train to any particular line of travel. He had ample space to pass the plaintiff's decedent and the car being propelled on this particular street and at the time alleged, and the plaintiff's decedent was not called upon to anticipate negligence on the part of the driver of another vehicle approaching from the rear. Plaintiff's decedent could not know that the defendant had no intention of stopping or turning to the left.

The presence or absence of contributory negligence on the part of plaintiff's decedent being a question of fact to be determined by a jury where a jury is present, or by the court perforce where a jury has been waived, the duty is then upon the court to determine whether under existing conditions, plaintiff's decedent was guilty of contributory negligence.

Having thus found that plaintiff's decedent was without negligence, and that the defendant was guilty of sole negligence, and that such negligence was the sole and proximate cause of the death of decedent, James Kelly, and having found that damages ensued, an entry is authorized award-

ing judgment in the sum of ten thousand ($10,000) dollars, together with costs, in favor of Rosina Kelly, administratrix of the estate of James Kelly, deceased.

An exception is allowed to the defendant herein to these findings of fact and law.